IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| M.D.P., a child, who sues by and through her father and mother and next friends, GAVIN J. PUGH and ABBY NICOLE PUGH; GAVIN J. PUGH and ABBY NICOLE PUGH, individually for their separate claim for derivative injury and damages, <br><br>      Plaintiffs, <br><br> v. <br><br> HOUSTON COUNTY HEALTH CARE AUTHORITY d/b/a/ SOUTHEAST ALABAMA MEDICAL CENTER; DOTHAN OBGYN, INC.; GUY MALCOLM MIDDLETON, M.D.; and DAWN MICHELLE RALLS, R.N., <br><br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 1:11-CV-461-WHA ) (WO) ) ) ) ) ) ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a pair of Motions to Dismiss filed by Guy Malcolm Middleton, M.D. ("Middleton") and Dothan OBGYN, Inc. ("OBGYN") jointly (Doc. #10), and by Houston County Health Care Authority d/b/a Southeast Alabama Medical Center ("SAMC") and Dawn Michelle Ralls ("Ralls") jointly (Doc. #11), on August 26, 2011. The court has diversity of citizenship jurisdiction over this action.

The Plaintiffs, M.D.P., Gavin J. Pugh, and Abby Nicole Pugh, collectively "the Plaintiffs"), filed a Complaint in this court on June 14, 2011, alleging three claims. Count I alleges that Defendants Middleton, OBGYN, and SAMC breached a contract of which Plaintiffs

were third party beneficiaries, and Count II alleges that all the Defendants committed medical negligence by breaching the applicable standards of care for medical professionals concerning the birth of M.D.P.  Also, in a separate claim, not numbered as a Count but labeled Derivative Claims of Gavin and Abby Pugh, Plaintiffs Gavin and Abby Pugh also allege individual claims for emotional distress and mental anguish as the result of the Defendant's aforementioned breach of contract and medical malpractice claims as to M.D.P.

SAMC and Ralls filed a Motion to Dismiss raising two issues: (1) that Count I, breach of contract, is preempted by Count II, tort, and should be dismissed as a separate claim, and (2) that the Derivative Claims of Gavin and Abby Pugh, fail as a matter of law because there was no physical injury to those Plaintiffs, and also because they are barred by the statute of limitations.

Middleton and OBGYN filed an Answer which included a Motion to Dismiss, asserting failure to state a claim and failure of the Complaint to specify the date in year 2004 when Plaintiff M.D.P. was born.  The Answer included a defense of the statute of limitations. Although Middleton and OBGYN did not file a brief in support of their Motion to Dismiss, the court will consider their statute of limitations defense under their failure to state a claim ground, since applicable dates appear on the face of the Complaint.

The Plaintiffs filed their Responses in Opposition to the Motions to Dismiss (Doc. #21, #22), on September 20, 2011.  Defendants SAMC and Ralls filed a Reply to the Plaintiffs' Response to Motion to Dismiss (Doc. #24), on September 27, 2011.  Defendants Middleton and OBGYN did not file a reply.

For reasons to be discussed, the Motions to Dismiss are due to be GRANTED in part and DENIED in part.

## II.  MOTION TO DISMISS STANDARD

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See Ashcroft v. Iqbal*, _ U.S. _,  129 S. Ct. 1937, 1949-50 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  The factual allegations "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.

Section 6-5-551, *Alabama Code*, requires complaints against health care providers to include details of each act or omission complained of, including the date, time, and place of the acts, in order to state a claim upon which relief may be granted.

## III.  FACTS

The allegations of the Plaintiffs' Complaint are as follows:

On the morning of M.D.P.'s birth in 2004, from 5:04 a.m. until 5:40 a.m., Abby Pugh's fetal monitor demonstrated that the fetus, M.D.P., was experiencing fetal distress.  Such distress can lead to prolonged oxygen deprivation in the fetus's brain which results in severe brain

damage. This distress went unknown to the Defendants and lasted until the child's birth at 7:44 a.m. Furthermore, Abby Pugh was hooked to an Electronic Fetal Monitor, but her heart rate, and not the fetal hart rate, was being recorded on that device from 6:20 a.m. until M.D.P.'s birth at 7:44 a.m. Accordingly, neither the attending physicians nor the attending nurses were aware that the fetal heart rate was going unrecorded, and M.D.P.'s fetal distress continued for a prolonged period of time and resulted in M.D.P.'s development of hypoxic ischemic encephalopathy. Had the Defendants been properly monitoring the umbilical cord blood gas values, M.D.P.'s distress would not have gone unnoticed for such a critically prolonged period.

  M.D.P. was delivered "via operative vacuum-assisted vaginal delivery" and it was at this time the attending physicians discovered that the umbilical cord was wrapped around M.D.P.'s neck. (Doc. #1 at 5). Furthermore, M.D.P. "was not breathing," "had no heart rate," "was completely flaccid," "had no body or eye movement for approximately 15 minutes or longer," "experienced seizures," and "she had suffered acidosis, a condition that is predictive of fetal hypoxia or loss of oxygen to the brain." (Doc. #1 at 5). Because of M.D.P.'s critical condition, she had to receive an urgent transfer from Dothan to Montgomery Baptist East Hospital. (Doc. #1 at 6). In order to survive until her transfer, "M.D.P. was placed on a mechanical ventilator." *Id.*

  The Plaintiffs further allege that Gavin Pugh was a member of the military and, as such, was enrolled in the TRICARE program. TRICARE is a "comprehensive managed health care program for the delivery and financing of health care services in the Military Health System (MHS)." *Id.* Essentially, it provides comprehensive health insurance for current and retired military service people at both "civilian sector health care providers" and "military treatment

facilities." *Id.* Civil sector health care providers that are a part of the TRICARE system are subject to the administration of the appropriate regional TRICARE administration. "TRICARE South Region, which includes Alabama, [is administered by] Humana Military Healthcare Services, Inc. (Humana Military), a Delaware corporation." *Id.* ¶ 16. It is important to note that "TRICARE civilian healthcare providers are not employees or agents of the United States government, rather they are independent contractors." *Id.* at ¶ 17 (citing 32 C.F.R. § l99.l7(p)(3)).

At the time of the events alleged in the Plaintiffs' Complaint, SAMC, OBGYN, and Middleton were all TRICARE providers, and, accordingly, were bound to the terms of the contract as administered by Humana. *Id.* at ¶ 25, ¶ 26. Pursuant to the contract's terms, standards of care were provided to individual providers and certain procedures were required for institutional health care providers, such as the presence of a governing body to be responsible for the hospital's conduct. *Id*. at ¶ 19, ¶ 20, ¶ 21 (citing 42 C.F.R. § 482.12). These regulations are also part of Alabama's licensing standards and requirements. *Id.* at ¶ 22 (citing Ala. Admin. Code § 420-5-7.06). The Plaintiffs cite language from the Tricare Provider Handbook for its contention that they were intended beneficiaries of the contract between Humana Military and the Defendants. *Id.* at ¶ 28. Furthermore, the Plaintiffs allege that they complied with all requirements for their participation in the TRICARE program as of the time the events giving rise to M.D.P.'s injury.

Plaintiffs allege that SAMC breached its contract with Humana Military by "failing to implement, enforce and require training and testing to verify that Ralls, other Labor and Delivery nurses, and Guy Middleton:" "knew how to interpret the Electronic Monitor Fetal patterns;"

"knew how to recognize and diagnose fetal intolerance to labor;" "knew and recognized the difference between the fetal and maternal heart rates." *Id.* at ¶ 30(a), ¶ 30(b), ¶ 30(c). Furthermore, SAMC breached their contract with Humana "by failing to require that Defendants Middleton, Ralls, and other Labor and Delivery nurses were trained" regarding the placement and use of a scalp electrode, a pulse oximeter, and an Electronic Fetal Monitor. *Id.* at ¶ 30(d), ¶ 30(e).

The Plaintiffs allege that it is "well known and documented in the literature" that a temporary loss of the fetal heart rate can occur because of fetal movement, and proper training for labor and delivery personnel requires teaching about the prompt resolution to this common problem. *Id.* at ¶ 33. Furthermore, the Plaintiffs allege it is "usually not difficult" to tell when an instrument is measuring the heart rate of the fetus instead of the mother because the former's heart rate is significantly higher than the latter. *Id.* at ¶ 35. Lastly, "due to the extreme importance of continually monitoring the fetal heart rate, when there is any doubt, the maternal heart rate should be documented using a pulse oximeter and the fetal heart rate should be measured and documented by the use of a fetal scalp electrode. Both of these methods for measuring the fetal and maternal heart rate are well known and commonly used, especially when the EFM reflects an abnormal fetal heart rate pattern, which was present in this case." *Id.* at ¶ 36.

The Plaintiffs allege that, because of the Defendants' alleged medical negligence and breach of contract with Humana, M.D.P. has suffered a long list of "permanent, severe, and catastrophic injuries and damages." In addition, the Plaintiffs allege that Gavin and Abby Pugh have also suffered from depression, anxiety, mental anguish, marital distress, etc.

## IV. **DISCUSSION**

This case is controlled by the provisions of the Alabama Medical Liability Act (§§ 6-5-480 through 6-5-488), as supplemented by the Alabama Medical Liability Act of 1987 (§§ 6-5-541 through 6-5-547, and 6-5-550 through 6-5-552) and the Alabama Medical Liability Act of 1996 (§§ 6-5-548 through 6-5-549.1) of the *Alabama Code*. The court will refer to all of these as sections of the AMLA.

### A. Derivative Claims of Gavin and Abby Pugh

All Defendants contend that these claims are barred by the applicable statute of limitations.

Pursuant to § 6-5-482(a), AMLA, "[a]ll actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim." Section 6-5-482(b) then provides that "in the case of a minor under four years of age such minor shall have until his eighth birthday to commence such action."

As alleged by the Plaintiffs, M.D.P. has not yet reached her eighth birthday, and therefore, the Defendants do not assert this defense as to M.D.P.'s claims. Gavin and Amy Pugh, however, assert that their separate derivative claims are also governed by this provision, referred to in briefs as the "infancy savings clause." They contend that their claims are covered by this extended time limit provision because their emotional harm claims are derivative of and dependent upon M.D.P.'s claims. They argue that their claims are not separate claims, but rather dependent on M.D.P.'s claim, and that, therefore, any time limit extensions granted to M.D.P.

should also be granted to them. To make this argument, they rely on cases from Wisconsin and Ohio. This court, however, is governed by Alabama law.

In the analogous context of a derivative claim for loss-of-consortium, the Alabama Supreme Court has "held that although a loss-of-consortium claim is derivative of the claims of an injured spouse, it is also a separate claim that is distinct from the claims of the injured spouse." *Georgia Power Co. V. Partin*, 727 So.2d 2, 6 (Ala. 1998) (citing *Mattison v. Kirk*, 497 So. 2d 120, 123 (Ala.1986) ("The wife's right of recovery depends only upon a showing of liability on the part of [the] third-party [d]efendants. To make her case, she simply must prove that her husband's injury was caused by [the defendants'] wrongful acts and that, as a result, she lost her husband's consortium from the time of the injury")); *see also Emerson v. Southern Ry. Co.*, 404 So. 2d 576, 580 (Ala. 1981) ("A wife's right to recovery for loss of consortium was recognized by this Court in *Swartz v. United States Steel Corp.*, 293 Ala. 439, 304 So. 2d 881 (1974), and was considered to be a separate property right"). Although, the cases defining loss of consortium under Alabama law have been in the context of spouses, there is no basis in Alabama case law to treat a claim based on parents' emotional distress and mental anguish resulting from injury to their child differently. Therefore, this court finds that under Alabama law Gavin and Abby Pugh's emotional damages claims are separate and independent from M.D.P.'s claims.

The Alabama Supreme Court has also explained that "the derivative claim for loss of consortium of a spouse or parent is not subject to the tolling statute of the infant or incompetent." *Emerson v. Southern Ry. Co.*, 404 So. 2d 576, 580 (Ala. 1981). Therefore, this court finds that the claims by Gavin and Abby Pugh are not subject to the tolling provisions which benefit

M.D.P.'s claims, and the court must dismiss their claims with prejudice, because the two-year statute of limitations for them to bring their personal claims expired before the filing of this suit.

Having found that the statute of limitations has run on these claims, the court finds it unnecessary to address the Defendant's argument that the claims fail the "zone-of-danger" test for allowing suits for emotional distress in the absence of physical personal injury.

### B. § 6-5-551, Pleading Requirements

Defendants Middleton and OBGYN contend that M.D.P.'s complaint does not meet the pleading requirements of the AMLA, § 6-5-551, which provides that "in any action for injury . . . whether in contract or tort, against a health care provider for breach of the standard of care . . . . The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted." Ala. Code § 6-5-551. Middleton and OBGYN narrow the focus of the deficiency to the vague date given in the complaint: "on the morning of M.D.P.'s birth in 2004, during the period at 0504-0540 . . . ." (Quoting Doc. #1 ¶ 10).

These Defendants point out that the Complaint alleges only the year of the acts, and fails to allege the specific date in 2004, and that this fails to comply with § 6-5-551. To explain the lack of an exact birth date for M.D.P., the Plaintiffs cite Local Rule 5.2(a) (M.D. Ala.) (eff. Dec. 1, 2010), which requires that litigating parties refrain from including names of minor children and dates of birth for individuals in "pleadings, documents, or any other papers filed with the

9

Court, including exhibits to pleadings, documents or other papers, whether filed electronically or by paper, unless otherwise ordered by the Court."

Even in the absence of the exact date of M.D.P.'s birth, the Complaint alleges the location, the year, the parties involved, the exact time of day the events occurred, and highly detailed explanations of each Defendants' acts or omissions that lead to M.D.P.'s injuries. Middleton and OBGYN obviously have knowledge of when M.D.P. was delivered. Although Plaintiffs could have included the full date of birth in a manner provided by Local Rule 5.2(b) and (c), the court finds that to be unnecessary, and these Defendants' Motion to Dismiss on that basis is due to be denied.

### C. Tort vs. Contract Claims

Defendants Ralls and SAMC assert that M.D.P.'s Count I, breach of contract, and Count II, medical negligence, are both governed by the AMLA, because both are based on the same allegations of medical malpractice, and that the breach of contract claim is due to be dismissed because the AMLA tort claim for medical malpractice is available through Count II.

In *Collins v. Ashurst*, where the trial court had stricken claims of assault and battery, and trespass, holding that only a claim for medical malpractice was available because of the AMLA, the Alabama Supreme Court reversed, explaining "that the AMLA recognizes the possibility that more than one type of action may be brought under that act." 821 So. 2d 173, 176 (Ala. 2001). "Thus, the AMLA envisions both tort claims and contract claims, based on either intentional or unintentional conduct. This particular section provides the applicable standard of care that governs all actions against the health-care providers specified in the act; *it does not contain language that would lead to the conclusion that the only available cause of action, in contract or*

*in tort, is medical malpractice.*" *Collins*, 821 So. 2d at 176 (emphasis added). Most pointedly, the Court held "that the trial court erred in determining that the AMLA allows for only one cause of action." *Id*. Therefore, based on *Collins*, the Motion to Dismiss Count I is due to be denied. The contract claim may be asserted under the AMLA.

This issue may well turn out to be academic. The standard of proof, standard of care, discovery, complaint requirements, statute of limitations, and qualifications to give expert testimony are all the same for both contract and tort actions under the clear language of applicable sections of the AMLA. At this stage of the proceedings, however, the court finds no basis for dismissing the contract claim.

## V.  CONCLUSION

For the reasons set out above, it is hereby ORDERED as follows:

1. The Motions to Dismiss the personal claims of the Plaintiffs Gavin and Abby Pugh are GRANTED, and Gavin J. Pugh and Abby Nicole Pugh, individually for their separate claims for derivative injury and damages, are DISMISSED with prejudice as parties Plaintiff.

2. The Defendants' Motions to Dismiss as to the claims of M.D.P. are DENIED.

3. The case will proceed on M.D.P.'s Count I and Count II.

Done this 3rd day of November, 2011.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE