IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| M.D.P., etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:11cv461-WHA |
| | ) | |
| GUY MALCOLM MIDDLETON, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion and Order**

This cause is before the court on the Defendants Southeast Alabama Medical Center and Dawn Michelle Ralls's Daubert Motion to Exclude Certain Testimony of Michelle Murray, Ph.D., RNC-OB (Doc. #109), Motion to Exclude Testimony of Michael Hall (Doc. # 110), Motion to Exclude Testimony of Linda Huffman (Doc. #114), and a Motion to Exclude Testimony of Michael Hall  (Doc. #115) filed by Guy Malcolm Middleton, MD and Dothan OBGYN, Inc.

The admissibility of expert testimony is governed by Fed. R. of Evid. 702 which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702, as interpreted by the Supreme Court, "assign[s] to the trial judge the task of

ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).  This "gatekeeping" function is important "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). "Indeed, no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case...." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  As a gatekeeper the court must do "a preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue."*Daubert*, 509 U.S. at 593-94.

In determining the admissibility of expert testimony under Rule 702, the trial court must conduct "a rigorous three part inquiry," considering whether:  (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).

**1.  Michelle Murray**

The Defendants's Motion which seeks to exclude testimony from Michelle Murray points out that she is a nurse and has a Ph.D, but is not a medical doctor.   The motion seeks to exclude testimony as to the causation of M.P.D.'s injuries.

The Alabama Supreme Court has held that a trial judge did not abuse his discretion in requiring that a physician, and not a registered nurse, was competent to testify as an expert on the issue of proximate cause. *Phillips v. Alamed Co., Inc.*, 588 So.2d 463, 465 (Ala. 1991). In *Phillips*, the plaintiff offered the testimony of a registered nurse on the issue of proximate cause, where the plaintiff's theory was that a failure to report shortness of breath to a physician resulted in the plaintiff's death. The court held that the issue of proximate cause involved complex medical issues, such that the trial judge did not abuse his discretion in excluding it. *Id.* at 465.

In response to the motion, the Plaintiff states that she might concede that nurses cannot render ultimate causation opinions, in this case, that MDP suffered cerebral palsy as a result of hypoxic ischemic encephalopathy, but that there is no case law which prohibits her from offering testimony that MDP suffered oxygen deprivation or hypoxia as a result of the interpretation of MDP's electronic fetal monitor ("EFM") strips.

The court has carefully considered the requirements of Rule 702 and has conducted the required *Daubert* inquiry, based on briefs and all documents submitted by the parties. This has included the cv and Rule 26 report of Michelle Murray, Ph.D., RNC-OB, medical records, and deposition excerpts.

Murray graduated *magna cum laude* from U.C.L.A. with a B.S. in Nursing, and holds a M.S. in Nursing with emphasis in Maternal-Child Health, and Ph.D. in Education from the University of New Mexico. She has years of experience as an R.N. in the field of obstetric nursing and also in producing educational materials for obstetric nurses. She has published widely on the subject of delivery room nursing and, particularly pertinent to this case, the subject of electronic fetal monitoring. She is well qualified to testify as to the standard of care of

obstetrical nurses and their hospitals. The problem is where to draw the line between that and medical causation opinions such as prohibited in *Phillips*.

First, testimony by Murray that the failure to correctly interpret the EFM strips ultimately caused brain damage through oxygen deprivation and that this caused M.D.P. to suffer cerebral palsy appears to the court to be akin to the testimony prohibited in *Phillips*. The Motion is, therefore, due to be GRANTED as to that causation testimony by Murray.

Short of that, it appears to the court that the other expert testimony set out in Murray's Rule 26 report meets the *Daubert* standard and will be admitted. She can testify not only as to the standards of care for nurses and hospitals under the circumstances presented in this case and where they were breached, but also as to why the standards require what they do and the problems which could result from a breach. She can give her opinions as to what the electronic monitoring strips showed at various times, what the nurses involved should have recognized and done, and what medical records show at various relevant times. It does not appear that this testimony would be within the scope of causation testimony to which the Defendants object.

**2. Dr. Michael Hall**

Dr. Michael Hall is a physician offered by the Plaintiff to testify at trial that actions by the Defendants in this case were the proximate cause of damages suffered by the Plaintiff.

One aspect of Hall's testimony is challenged on the basis that he is not qualified to testify to the standard of care for a nursing professional because he is not a nurse. *See Bradley v. Mariner Health, Inc.*, 315 F. Supp. 2d 1190 (S.D. Ala. 2004). The Plaintiff, however, does not

seek to offer testimony from Dr. Hall as to the standard of care for nurses (Doc. #166), so this aspect of the motion is due to be DENIED as moot.

Dr. Hall's testimony is also challenged on the basis that his opinion as to causation is not sufficiently reliable. In support of their motions, the Defendants rely on *Tanner v. Westbrook*, 174 F.3d 542 (5th Cir. 1999), *superseded in part by rule on other grounds*, Fed. R. Evid. 103(a) (2000). In that case, the court reversed and remanded for retrial where a physician was allowed to offer an opinion at trial that asphyxia of an infant during delivery caused the infant to have cerebral palsy. The court held that the testimony was inadmissible because the doctor had "no background in studying the causes of cerebral palsy," he did not have the kind of specialized knowledge required, nor did he directly rely on medical literature directly addressing the causation issue in the case. *Id.* at 548. Later cases in the Fifth Circuit applying *Tanner* have distilled from it the rule that an expert's opinion as to causation is not admissible when the medical literature did not support the theory of causation and the expert had no personal experience or specialized knowledge to support the testimony. *See Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009); *Lifemark Hosp., Inc. v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, No. 94-1258, 1999 WL 33579253, at *2 (E.D. La. Sept. 21, 1999). The case has not been interpreted as a bright line rule that a causation theory linking cerebral palsy and asphyxia is unreliable as a matter of law.

Another court has examined the *Tanner* opinion, but has found expert testimony about the relationship of asphyxia and cerebral palsy to be admissible under *Daubert*. In *Koval v. Kincheleoe*, No. 99-1524-T, 2001 WL 34748892 (W.D. Okla. Dec. 28, 2001), the defendants sought to exclude causation testimony under *Daubert*. The defendants argued that the plaintiffs'

expert did not have a sufficient scientific basis for the opinion that a child's cerebral palsy was caused by hypoxia or asphyxia during the labor process. The defendants there also contended that the connection between asphyxia and cerebral palsy is uncertain in the medical evidence. The plaintiff's expert offered the opinion that the lack of oxygen which caused the cerebral palsy was evidenced by EFM evidence.

The district court noted that there are numerous medical articles about cerebral palsy and its causes and whether EFMs can reliably predict the possibility of cerebral palsy. The court reasoned that although there is a dispute in the medical literature about the reliability of EFM readings in predicting hypoxia or cerebral palsy, the use of the evidence is not so unreliable as to render the expert's opinion inadmissible. The court concluded that the plaintiff's expert testimony was admissible under *Daubert*, that the issues raised by the defendants went to the weight and sufficiency of the evidence, and that whether the EFM could have predicted cerebral palsy and should have alerted action in the case was a question for determination by the jury. *Id.* at *5. The court distinguished *Tanner* on the basis that in *Tanner*, the expert lacked specialized knowledge and the causation theory was not supported by the medical literature.

In this case, the Defendants have not presented expert testimony or medical literature in support of their motion, but seek to rely solely on the *Tanner* opinion. In evaluating the motion, the court has the benefit of Dr. Hall's deposition transcript in which he was asked about the basis for the opinions, including medical literature; his report; and a supporting affidavit. This court, therefore, does not find a *Daubert* hearing to be necessary. *See United States v. Hansen*, 262 F.3d 1217, 1234 (5th Cir. 2001) (stating that a "district court should conduct a *Daubert* inquiry where the opposing party's motion for a hearing is supported by 'conflicting medical literature

6

and expert testimony.' *Tanner v. Westbrook*, 174 F.3d 542, 546 (5th Cir. 1999)"). Dr. Hall is board certified in obstetrics and gynecology, has cared for "numerous pregnant patients with the same or similar clinical circumstances such as those of Mrs. Pugh," and has stated that understanding and evaluating the causes of birth injuries to newborns and the causes of cerebral palsy have been an integral part of his continuing medical education and a regular part of his practice as an OBGYN for over thirty years. (Doc. #155-1). This court is persuaded by the same reasoning as the district court in the *Koval* case that *Tanner* does not apply in this case, because Dr. Hall has expertise in the study of the causes of cerebral palsy, he has relied on supporting literature, and the conflict in the medical literature identified in case law goes to the weight, and not the admissibility, of his opinion. The Motions to Exclude are, therefore, due to be DENIED as to Dr. Hall's causation testimony.

### 3. Linda Huffman

The Plaintiff will not call Linda Huffman as a witness in this case (Doc. #147) so the motion as to this witness is due to be DENIED as moot.

For the reasons discussed it is hereby ORDERED as follows:

1. Defendants Southeast Alabama Medical Center and Dawn Michelle Ralls's *Daubert* Motion to Exclude Certain Testimony of Michelle Murray (Doc. #109) is GRANTED as to Michell Murray's testimony as to medical proximate cause as set out above, and DENIED to the extent that the Motion may seek to prohibit opinion testimony other than that.

2. The Motion to Exclude Testimony of Michael Hall (Doc. # 110) and Motion to

7

Exclude Testimony of Michael Hall (Doc. #115) are DENIED as moot as to the standard of care of nurses, and DENIED in all other respects.

    3. The Motion to Exclude Testimony of Linda Huffman (Doc. #114) is DENIED as moot.

Done this 25th day of January, 2013.

                                          /s/ W. Harold Albritton
                                          W. HAROLD ALBRITTON
                                          SENIOR UNITED STATES DISTRICT JUDGE