IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| M.D.P., etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:11cv461-WHA |
| | ) | (wo) |
| GUY MALCOLM MIDDLETON, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This cause is before the court on the Defendants Houston County Health Care Authority and Dawn Michelle Ralls's Motion to Exclude Testimony of Paul M. Deutsch (Doc. #110), Dothan OBYN, Inc. and Guy Malcolm Middleton's Motion to Strike and Preclude Testimony by Dr. Paul Deutsch (Doc. #113), a Motion to Strike Exhibit G from Plaintiff's Opposition to Defendants's *Daubert* Motion to Exclude the Testimony of Dr. Paul Deutsch (Doc. #167); the Plaintiff's Second Motion in Limine (Doc. #136); and the Plaintiff's Response to Motion to Strike or in the Alternative Motion to Reinstate Withdrawal of Plaintiff's Exhibits 104, 105 and 106 (Doc. #188).

1. **Paul M. Deutsch**.

The Defendants seek to exclude the testimony of Paul M. Deutsch ("Deutsch").[1]  Deutsch prepared a Life Care Plan and vocational assessment of M.D.P. and seeks to offer testimony as to

---

[1] Although there are separate motions, the motions raise essentially the same issues, so the court will refer generally to "the Defendants" in discussing the basis for motions to exclude Deutsch's testimony.

her future needs and expenses in that regard.

The admissibility of expert testimony is governed by Fed. R. of Evid. 702 which

provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

Rule 702, as interpreted by the Supreme Court, "assign[s] to the trial judge the task of

ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task

at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).   In determining the

admissibility of expert testimony under Rule 702, the trial court must conduct "a rigorous three

part inquiry," considering whether:  (1) the expert is qualified to testify competently regarding

the matters he intends to address; (2) the methodology by which the expert reaches his

conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) the testimony assists the trier of fact, through the application of scientific, technical, or

specialized expertise, to understand the evidence or to determine a fact in issue.  *City of*

*Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998).

The Defendants have moved to exclude Deutsch from testifying on the basis that his

projections in this case lack a credible scientific basis.  The Defendants advance several

arguments, including that there is no evidence of M.D.P.'s life expectancy in this case, so that

Deutsch's projections are not reliable; that because only seven of Deutsch's projections are

based on a consultation with a physician who has treated M.D.P., his methodology is not

reliable; and that Deutsch has not adhered to his own standards for life care planning because he stated in his deposition that making a life care plan is a team approach, but he did not rely on a group of physicians.  They rely in part on *Mahmood v. Narciso*, No. 09-2656, 2012 WL 1067700) (D.N.J March 29, 2012), for the proposition that portions of a life care planner's subjective belief are due to be excluded.

As to the issue of the evidence of M.D.P.'s life expectancy, at an earlier point in this case the Plaintiff withdrew three exhibits in response to objections by the Defendants, stating that the documents would not be offered as exhibits, but may be used during direct or cross-examination of witnesses. (Doc. #99).  The exhibits were 104, 105, and 106 on the Plaintiff's list, and were designated as materials upon which experts will rely, identified by experts, and materials attached to the depositions of experts.  These exhibits included Table 6 of the National Vital Statistics Report, Vol. 59, Number 9, United States Life Tables 2007, as published by the United States Department of Health and Human Resources ("the Mortality Tables"), discussed by Dr. Raffa, an economist expert of the Plaintiff, in his deposition.  The primary objection to the exhibits was that they were vaguely described (Doc. #80).  There was no objection based on the timeliness of disclosure, and the exhibits had in fact been timely disclosed.  As earlier stated, the Plaintiff withdrew the exhibits in response to the objections.

In response to the Defendants's argument with respect to Deutsch's testimony, the Plaintiff has attached evidence of M.D.P.'s life expectancy as Exhibit G.  Exhibit G is Table 6 of the National Vital Statistics Report, Vol. 59, Number 9, United States Life Tables 2007, as published by the United States Department of Health and Human Resources.

The Defendants have moved to strike Exhibit G, arguing that it is not an exhibit marked

for admission at trial.  When given the opportunity to explain the basis for this exhibit's admissibility, the Plaintiff has stated that the exhibit was earlier inadvertently withdrawn as part of the generally designated documents withdrawn by Doc. #99, has argued that it is admissible, and alternatively has asked for the court to reinstate this, and other, exhibits as exhibits for trial. The Plaintiff points out that the exhibit was used by the Defendants in the questioning of Plaintiff's expert Dr. Raffa.[2]

Upon consideration of the briefs on this issue, finding that the Mortality Tables are self-authenticating and admissible without further proof, that its withdrawal was a result of excusable inadvertence, and that no prejudice will result to the Defendants from the reinstatement of a timely-disclosed and self-proving exhibit which has been the subject of discussion by Dr. Raffa in his deposition, the court concludes that it will grant the Plaintiff's alternative request for relief to the extent that Exhibit G to Doc. #149 will be reinstated as Plaintiff's Exhibit #104 in this case.  Therefore, there is admissible evidence of M.D.P.'s life expectancy in the form of Table 6 within the National Vital Statistics Report, Vol. 59, Number 9, United States Life Tables 2007, and Deutsch's testimony is not due to be excluded on that basis.  The Defendants will be allowed to reinstate Dr. Delaney as an expert witness if they wish to do so.

With respect to the arguments challenging the reliability of Deutsch's testimony in this case, this court first notes that courts routinely recognize that life care planners may be qualified to provide testimony as to future care of injured patients, and the cost of such care.  *See, e.g.*,

---

[2] In support of her motion, the Plaintiff also notes that the Defendants have withdrawn Dr. Christopher Delaney, who would have offered evidence as to M.D.P.'s life expectancy.  The Plaintiff states that she does not object to Dr. Delaney being reinstated as an expert if she is allowed to admit evidence of the mortality table.

*Deramus v. Saia Motor Freight Line, LLC*, No. 2:08cv23-MEF, 2009 WL 1664084 (M.D. Ala. June 15, 2009) (Fuller, C.J.).

In *Rivera v. Turabo Medical Center Partnership*, 415 F.3d 162 (1st Cir. 2005), the First Circuit Court of Appeals reviewed a jury verdict rendered in a case similar to this one.  In *Rivera*, an infant suffered asphyxia during delivery as a result of negligent monitoring of the fetal heart rate.  The plaintiffs offered testimony of a life care planner who reviewed records from the agency providing the plaintiff with skilled care, a letter from the child's physician, and an interview with the child's family and caregiver.   The life care planner did not have a physician review his projections regarding the child's future medical needs.  The court reasoned that, although the expert's report might have benefitted from a physician's review, the district court did not abuse its discretion in determining that the methodology was sufficiently reliable to be admissible.  *Rivera*, 415 F.3d at 171.

In *Deramus*, a defendant challenged a life care planner's opinion as to future medical needs. 2009 WL 1664084 at *2.  The life care planner testified that her care plan was based on a review of medical records, depositions taken by the plaintiff's physicians, and meetings with the plaintiff.  The court concluded that the defendant's objections to the testimony went to the weight, and not the admissibility, of the testimony.  *Id.* at *2; *see also In re Knudsen*, No. 08-505-CG-B, 2010 WL 1994906 (S.D. Ala. May 17, 2010) (stating that the challenges to the life care planner's application of her methodology in the case were concerns subject to cross-examination, but not for excluding the testimony).

Deutsch has a Master's Degree and a Ph.D in Rehabilitation Counseling.  He is Board Certified by the Commission on Rehabilitation, and a Board Certified Life Care Planner.  He has

twenty-six years of experience in evaluating the rehabilitative needs of the severely injured, including work as a consultant in litigation.  He has also published books and articles in the field. In his deposition, Deutsch explained that he reviews medical records, then he writes to treating doctors asking for additional information beyond the records that tells him about needed follow-up and tests.  (Doc. #149 Ex. D at p.25:4-13).   Deutsch also looks at Clinical Practice Guidelines and recent research literature.  (Id. at 25:14-17).   Deutsch explains in his deposition that he does not make medical recommendations, but pulls recommendations from medical records, or gets them from treating doctors. (Id. at 234: 21-235:1).  The court concludes, therefore, that Deutsch is qualified to offer testimony in this case.

As to the argument that Deutsch did not follow his own methodology in this case, the evidence before the court is that Deutsch consulted with, and noted recommendations of, Dr. Pickzance, M.D.P.'s treating orthopedist.  Deutsch also included in his plan recommendations made by Andrea Zotovas, M.D.  Deutsch also included durable medical good items recommended based on medical literature regarding children with cerebral palsy.  (Id. at p. 257:14-22).

The court agrees with the Defendants to the extent that there may be some deficiencies in the strength of support for some of the recommendations in Deutsch's Life Care Plan, but, following the reasoning of other courts, particularly the First Circuit Court of Appeals in *Rivera*, the court concludes that those issues go to the weight, and not the admissibility, of Deutsch's testimony.  Deutsch will be able to testify, and be subject to cross-examination, about his opinions in this case.

2.  **Collateral Source**.

By her Second Motion in Limine, the Plaintiff seeks to exclude any evidence that

M.D.P.'s future medical needs may be paid for by governmental sources.   The Plaintiff points

out that during his deposition, Deutsch was asked whether any part of his Life Care Plan for

M.D.P. would not be paid for by Medicaid or different governmental programs, and Deutsch

answered that certain programs should pay for the majority of her therapies when M.D.P. reaches

age 21.

The Plaintiff argues that the collateral source rule should prevent the Defendants from

proving that M.D.P.'s injuries will be compensated from collateral sources.  The Plaintiff

acknowledges that Alabama statutes would allow for the admissibility of the evidence, but

contends that the Alabama statutes are rules of evidence which do not apply in federal diversity

cases, relying on *Craig v. F.W. Woolworth Co.*, 866 F. Supp. 1369 (N.D. Ala. 1993) and *Killian

v. Melser*, 792 F. Supp. 1217, 1218 (N.D. Ala. 1992).

This court has had occasion to address this issue previously.  *See Shelley v. White*, 711 F.

Supp. 2d 1295, 1297 & n.1 (M.D. Ala. 2010).   In *Shelley*, this court declined to follow *Craig*

and *Killian*, and concluded that Alabama's collateral source rule is substantive in nature and

applies in diversity cases.  Although this case involves future, not past, medical expenses, this

court sees no basis to depart from the reasoning of *Shelley* in this case.  As applied in this case,

the Plaintiff seeks to present evidence of what her reasonable expenses will be in the future, and

the Defendants may respond by putting on evidence of what may be reimbursed at a certain age

should M.D.P. reach that age, for the jury to consider in the event that it determines that the

Plaintiff is entitled to be compensated for future medical expenses.  Testimony in this regard

may, of course, be fully challenged on cross-examination.  Therefore, the Plaintiff's Second

Motion in Limine is due to be DENIED.

      For the reasons discussed, it is hereby ORDERED as follows:

      1.  The Motion to Exclude Testimony of Paul M. Deutsch (Doc. #110) and Motion to

Strike and Preclude Testimony by Dr. Paul Deutsch (Doc. #113) are DENIED.

      2.  The Motion to Strike Exhibit G from Plaintiffs' Opposition to Defendants' Daubert

Motion to Exclude the Testimony of Dr. Paul Deutsch (Doc. #167) is DENIED.

      3.  The Plaintiff's Second Motion in Limine (Doc. #136) is DENIED.

      4.  The Plaintiff's Alternative Motion to Reinstate Withdrawal of Plaintiffs' Exhibits 104,

105 and 106 (Doc. #188) is GRANTED to the extent that Exhibit G to Doc. #149 is reinstated as

Exhibit #104 in this case.

Done this 7th day of February, 2013.

                    /s/ W. Harold Albritton
                    W. HAROLD ALBRITTON
                    SENIOR UNITED STATES DISTRICT JUDGE